AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
JUN 25 2019
SOUTH
BY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One Samsung cellular telephone, Model Number SM-A505G, Serial Number R28M22JK6PR, IMEI Number 354464102003050

Case No. 19MJ266

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the Southern District of California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 USC 952 & 960 | Importation of a Controlled Substance |

The application is based on these facts:

See attached Affidavit of Special Agent Manuel Ramirez

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Manuel Ramirez, HSI

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/26/19

*Judge's signature*

City and state: San Diego, CA

Hon. Bernard G. Skomal, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OFAPPLICATION
FOR SEARCH WARRANT

I, Manuel Ramirez, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations Special Agents for the following target properties:

a. One black iPhone XS cellular telephone, Model Number A1920, with IMEI Number 356168099433331 ("**Subject Telephone #1**"); and,

b. One Samsung cellular telephone, Model Number SM-A505G, Serial Number R28M22JK6PR, with IMEI Number 354464102003050 ("**Subject Telephone #2**").

(collectively, "**Subject Telephones**"). The **Subject Telephones** were seized from Liam Graham Szalay BRISTOL ("BRISTOL") when he entered the United States from Mexico at the Otay Mesa, California Port of Entry driving a 2000 Ford Ranger concealing approximately 131.42 kilograms (289.72 pounds) of marijuana. It is believed that the **Subject Telephones** were used by BRISTOL during a drug smuggling event on June 3, 2019. He has been charged with importation of a controlled substance (marijuana) in violation of Title 21, United States Code sections 952 and 960 in the Southern District of California in case number 19-mj-2312-WVG.

2. Probable cause exists to believe that the **Subject Telephones** contain evidence relating to violations of Title 21, United States Code Sections 952 & 960 (Importation of a Controlled Substance). The **Subject Telephones** are currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and Customs Enforcement, 2255 Niels Bohr Court, San Diego, CA 92154 (Seized Property Vault).

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the items to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952, 960 & 963, and (2) property designed or intended for use, or which is or has been used as a means of committing criminal offenses.

**TRAINING AND EXPERIENCE**

4. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since January 2008. Prior to employment with HSI, I was a Customs and Border Protection Officer stationed at the San Ysidro Port of Entry. I am currently assigned to the Contraband Smuggling Group 2, San Diego, California. As part of my current duties, I investigate criminal violations relating to drug trafficking including Title 21 U.S.C. § 952 Importation of a Controlled Substance. In the course of my duties, I have been the case agent directing drug-related investigations. I have conducted surveillance and participated in the execution of search warrants in drug trafficking investigations. I executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants, witnesses, and informants while conducting drug trafficking investigations. I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

5. My training includes attending the Federal Law Enforcement Training Center where I completed nineteen (19) weeks of HSI Special Agent Training. Through my training and experience, I have gained extensive knowledge in detecting elements of criminal activity as it relates to narcotics/currency smuggling, trade fraud, and money

laundering. I have consulted or have been the affiant of over 50 search warrants. I have made numerous arrests and have conducted several investigations of such crimes related to, narcotics, money laundering, and customs fraud using a variety of investigative techniques.

6. Based on my training and experience as a HSI Special Agent, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, WhatsApp and other texting applications, the internet, video, social networking sites, and voice messages;

b. Drug smugglers will use WhatsApp and other encrypted texting applications on cellular telephones to communicate because they believe that these services insulate their communications from law enforcement;

c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

g. Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

9. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to identify attempts to import marijuana or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of marijuana or some other controlled substance from Mexico into the United States;

c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in smuggling marijuana or some other controlled substance from Mexico into the United States;

e. relating to the purchase of vehicles to import marijuana or some other controlled substance from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the smuggling of marijuana or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

10. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and

experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

11. On June 3, 2019, at approximately 12:07 a.m., BRISTOL, applied for entry into the United States through the Otay Mesa, California Port of Entry ("POE"). BRISTOL was the driver and sole occupant of a 2000 Ford Ranger with California license plates and a trailer. In primary inspection, BRISTOL declared two bird fountains, which were in the truck's bed and the trailer. The Customs and Border Protection Officer ("CBPO") asked if the fountains were for his personal use, to which BRISTOL said that they were. The CBPO also asked if he had crossed bird fountains before. BRISTOL said he did, through the San Ysidro Port of Entry, but that he was returned to Mexico and told to cross through Otay Mesa. The CBPO set BRISTOL, the Ranger, and the trailer to secondary inspection.

12. In secondary inspection, the trailer and its contents were screened by a Narcotics Detector Dog ("NDD"). The NDD alerted to the Ranger's bed. CBPOs broke one of the concrete fountain blocks by dropping it on the floor. The block broke into pieces, which revealed a large packaged concealed within the concrete fountain block. CBPOs further inspected the blocks and discovered packages concealed within the concrete fountain blocks loaded on the Ranger's bed and attached trailer. The CBPOs found 40 packages, which weighed approximately 131.42 kilograms (289.72 pounds), and field-tested positive for marijuana. BRISTOL was placed under arrest.

13. Following his arrest, BRISTOL elected to waive his Miranda rights and told agents that he would receive $6,000.00 to cross the contraband laden concrete fountain blocks to the United States from Mexico.

14. The **Subject Telephones** were seized from the cabin of BRISTOL's Ford Ranger.

15. An analysis of BRISTOL's crossing history revealed that BRISTOL initially entered the United States as the driver Red Ford Ranger on January 31, 2019. At the time, BRISTOL was not the vehicle's registered owner and the vehicle was bearing a different California License plate. Otay Mesa Port photographic evidence shows what appears to be concrete items in the Ford Ranger's bed driven by BRISTOL on January 31, 2019 and subsequent crossings from February to June.

16. Based upon my experience and investigation in this case, I believe that BRISTOL, as well as other persons as yet unknown, were involved in the trafficking of marijuana or some other prohibited narcotics. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug trafficking often require detailed and intricate planning to successfully evade detection. Consequently, drug trafficking often involves planning and coordination for several months—this planning often occurs through mobile telephones.

17. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin months or weeks before drugs are loaded in the car. Given this background, along with the facts above, I respectfully request permission to search the **Subject Telephones** for data beginning on January 31, 2019, up to and including June 3, 2019.

18. Based on my experience investigating narcotics smugglers, I also believe that BRISTOL may have used the **Subject Telephones** to coordinate with co-conspirators regarding the importation and delivery of the marijuana, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as

WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of BRISTOL and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein. Because the **Subject Telephones** have been in the custody of HSI since the date of BRISTOL's arrest, I believe that this information continues to be stored on the **Subject Telephones**.

## SEARCH METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive

equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

//

//

//

//

//

//

//

//

## CONCLUSION

23. Based on all of the facts and circumstances described above, there is probable cause to believe that BRISTOL used the **Subject Telephones** to facilitate the offense of importing marijuana. The **Subject Telephones** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952 & 960.

24. There is also probable cause to believe that evidence and instrumentalities of illegal activity committed by BRISTOL continues to exist on the **Subject Telephones**.

25. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

MANUEL RAMIREZ
HSI Special Agent

Subscribed and sworn to before me this 21 day of June, 2019.

HON. BERNARD G. SKOMAL
United States Magistrate Judge

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

One Samsung cellular telephone, Model Number SM-A505G, Serial Number R28M22JK6PR, with IMEI Number 354464102003050; currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154 (Seized Property Vault).

**ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the Subject Telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Subject Telephones. The seizure and search of the Subject Telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the Subject Telephones will be electronic records, communications, and data such as emails, text messages, messages from text messaging applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, audio files, videos, and location data, for the period of January 31, 2019, up to and including June 3, 2019:

a. tending to identify attempts to import marijuana or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of marijuana or some other controlled substance from Mexico into the United States;

c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in smuggling marijuana or some other controlled substance from Mexico into the United States;

e. relating to the purchase of vehicles to import marijuana or some other controlled substance from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the smuggling of marijuana or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the Subject Telephones; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952 & 960.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.